UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GEORGE CHACHAS,

          Plaintiff,

v.

CITY OF ELY, NEVADA, et al.,

          Defendants.

3:07-cv-00158-LRH-VPC

ORDER

Presently before the court is Defendants City of Ely, Nevada, et al.'s, (collectively "Defendants") Renewed Motion for Summary Judgment (#30). Plaintiff George Chachas has filed an opposition (#35), to which Defendants replied (#36). Also before the court is Plaintiff's Renewed Counter-Motion for Partial Summary Judgment (#35). Defendants have filed an opposition (#36) to which Plaintiff replied (#41).

**I.     Facts and Procedural History**

This is a civil action arising out of a dispute over utility fees associated with Plaintiff's property in Ely, Nevada. In June of 1991, Plaintiff was elected Mayor of the City of Ely ("City"). (Defs.' Renewed Mot. Summ. J. (#30), Ex. 2 at 2.) On October 16, 1992, Plaintiff was recalled from office. (*Id.*)

Over a decade later, Plaintiff was again elected mayor. However, Plaintiff's conduct in his position as mayor again came under scrutiny primarily because of Plaintiff's failure to pay certain

utility fees owing on the Town & Country Motel in Ely, Nevada, which Plaintiff owns.  On January 12, 2006, the City Council voted to hire outside legal counsel to collect the debt allegedly owed by Plaintiff for utilities provided to the Town & Country Motel.  (*Id.*, Ex. 6 at 15-16.)  At the meeting on January 12, 2006, Plaintiff advocated against the proposal to hire outside legal counsel and failed to disclose that he was the owner of the Town & Country Motel.  (*Id.*, Ex. 3 at 3.)  On January 26, 2006, Plaintiff vetoed the City Council's vote.  (*Id.*, Ex. 7.)  On February 9, 2006, the City Council overrode Plaintiff's veto.

The City subsequently retained counsel, and on February 28, 2006, in the Justice Court of Ely, Nevada, filed a complaint against Plaintiff for unpaid water, sewer and landfill fees concerning the Town & Country Motel.  (*Id.*, Ex. 9.)  The complaint also sought penalties and late fees for Plaintiff's delay in paying the fees.  In total, the complaint sought $4,942.72 in unpaid fees and penalties.  (*Id.*)

Plaintiff failed to file an answer, and as a result, on March 23, 2006, the Justice Court entered a default judgment against Plaintiff.  (*Id.*, Ex. 1.)  Plaintiff filed a motion to set aside the default judgment, which the Justice Court denied.  (*Id.*, Ex. 11.)  Finding Plaintiff had been properly served, the court concluded, "[Plaintiff] has had ample opportunity to dispute his fees[,] more particularly landfill, however, [he] has made an independent choice to ignore the billings of the City of Ely while still receiving the benefit for the service provided." (*Id.*, Ex. 11 at 3.) Plaintiff has not appealed the Justice Court's rulings to the district court in the State of Nevada as permitted by Nevada Justice Court Rules of Civil Procedure 72A.

On June 20, 2007, in relation to the utility fee dispute, the Nevada Commission on Ethics ("Commission") concluded Plaintiff had wilfully violated a variety of provisions of Nevada's Ethics in Government Law.  (*Id.*, Ex. 3 at 10.)  In its opinion, the Commission found the following facts: (1) Plaintiff owns the Town & Country Motel in Ely Nevada, and as the proprietor of the Motel, Plaintiff is required to pay certain utilities to the City of Ely; (2) on January 12, 2006, the City

2

1   Council voted to hire outside legal counsel to collect debt allegedly owed by Plaintiff for utilities

2   provided to the Town & Country Motel; (3) at the meeting on January 12, 2006, Plaintiff advocated

3   against the proposal to hire outside legal counsel and failed to disclose that he was the owner of the

4   Town & Country Motel; and (4) on January 26, 2006, Plaintiff vetoed the City Council's vote. (*Id.*

5   at 3-4.)

6       Based on these facts, the Commission concluded that by failing to disclose his relationship

7   to the Town & Country Motel, by advocating against hiring outside legal counsel, and by vetoing

8   the decision to hire legal counsel, Plaintiff had willfully committed the following ethics violations:

9   (1) a violation of Nevada Revised Statutes Section 281.481(2) for using his position in government

10  to secure unwarranted privileges, preferences, exemptions, and advantages for himself; (2) a

11  violation of Nevada Revised Statutes Section 281.501(4) for failing to disclose his relationship to a

12  matter in which he has a pecuniary interest; and (3) a violation of Nevada Revised Statutes Section

13  281.501(2) for advocating against a decision in which he has a pecuniary interest. (Id. at 5-9)  As a

14  result of its conclusions and pursuant to Nevada Revised Statutes Section 281.551(4)(c), the

15  Commission initiating a proceeding for Plaintiff's removal from office. (*Id.* at 10.)  Plaintiff has

16  not appealed the Commission's decision.

17  **II.    Legal Standard**

18      Summary judgment is appropriate only when "the pleadings, depositions, answers to

19  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

20  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

21  law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together

22  with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

23  to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

24  587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

25      The moving party bears the burden of informing the court of the basis for its motion, along

26

3

1   with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

2   477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party

3   must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

4   find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

5   1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

6          To successfully rebut a motion for summary judgment, the non-moving party must point to

7   facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.

8   Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might

9   affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

10  242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary

11  judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute

12  regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could

13  return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a

14  scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine

15  dispute; there must be evidence on which the jury could reasonably find for the plaintiff.  *See id.* at

16  252.

17  **III.   Discussion**

18         In the complaint, Plaintiff alleges the following claims for relief pursuant to 42 U.S.C. §

19  1983 for the denial of his right to equal protection of the laws in violation of the Fifth and

20  Fourteenth Amendment to the Constitution of the United States: (1) the unequal application of

21  landfill fees; (2) the unequal application of sewer fees; (3) the unequal application of water fees;

22  and (4) the unequal application of business license requirements.  In addition, Plaintiff alleges the

23  following claims for relief: (1) conspiracy to deprive Plaintiff of his equal protection rights in

24  violation of 42 U.S.C. §§ 1985, 1986; (2) conspiracy to "prevent, hinder and/or impede" Plaintiff in

25  the discharge of his official duties in violation of 42 U.S.C. §§ 1985, 1986; (3) a violation of

26

4

Plaintiff's "equal rights" and conspiracy to selectively enforce the City's business license and utility

fees in violation of 42 U.S.C. §§ 1983, 1985, 1986; (4) malicious prosecution; (5) unjust

enrichment; (6) harassment; (7) defamation and injury to reputation; and (8) temporary injunctive

relief.  Plaintiff agrees that the court should dismiss his third and sixth claims for relief for the

unequal application of water fees and conspiracy to prevent Plaintiff from discharging his official

duties.  Accordingly, the court will dismiss the claims with prejudice.  The court will address the

remaining causes of action in light of the parties' arguments below.

**A.  Immunity**

Defendants first contend they are entitled to absolute and qualified immunity.  With regard

to absolute immunity, Defendants have failed to identify the basis upon which they claim such

immunity.  To the extent Defendants assert sovereign immunity, this doctrine does not extend to

municipalities.  *Lake Country Estates, Inc. V. Tahoe Regional Planning Agency*, 440 U.S. 391, 401

(1979).

With regard to qualified immunity, this doctrine protects state officials from civil liability

for damages resulting from discretionary acts, so long as those acts do not violate clearly

established constitutional or statutory rights of which a reasonable person would have known.

*Harlow v. Fitzgerald*, U.S. 800, 917-18 (1982).  Qualified immunity is an "entitlement not to stand

trial or face the other burdens of litigation" and is an appropriate basis for granting summary

judgment.  *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001) (citations omitted).

In  *Saucier*, the Supreme Court established a two-step evaluation of qualified immunity,

which has also been adopted by the Ninth Circuit.  *See, e.g.*, *Johnson v. County of Los Angeles*, 340

F.3d 787, 791 (9th Cir. 2003); *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

The first step in the qualified immunity analysis is to determine whether, taken in the light most

favorable to the party asserting the injury, the facts alleged show the official's conduct violated the

plaintiff's constitutional rights.  *Saucier*, 533 U.S. at 201.  If there is no constitutional violation,

5

1    then the officer is entitled to qualified immunity.  *Id.*  However, if the court finds that a

2    constitutional violation has been established, the second step of the *Saucier* analysis requires the

3    court to determine whether the constitutional right was clearly established at the time of the

4    violation.  *Id.*  "If the law did not put the officer on notice that his conduct would be clearly

5    unlawful, summary judgment based on qualified immunity is appropriate."  *Id.* at 202.

6          The Supreme Court recently held that the two-step sequence adopted in *Saucier* is no longer

7    mandatory.  *Pearson v. Callahan*, 129 S.Ct. 808, 813 (2009).  Nonetheless, the *Pearson* decision

8    authorizes lower courts to "exercise their sound discretion in deciding which of the two prongs of

9    the qualified immunity analysis should be addressed first in light of the circumstances in the

10   particular case at hand."  *Id.* at 818.

11         Defendants contend Plaintiff has failed to demonstrate any constitutional violations.

12   Accordingly, the court will follow the *Saucier* approach and first consider whether Defendants

13   violated Plaintiff's constitutional rights.

14         **B.  Preclusive Effect of the Justice Court Decision**

15         Before considering the merits of Plaintiff's constitutional claims, the court must first

16   address Defendants' arguments concerning claim and issue preclusion.  Defendants argue

17   Plaintiff's claims are barred by claim and issue preclusion because Plaintiff's claims concern

18   matters already decided by the Nevada Justice Court.  "Federal courts must give the same

19   preclusive effect to state court judgments that those judgments would be given in that state's own

20   courts."  *Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 326 (9th Cir. 1995) (citations

21   omitted).  So long as the litigants were provided due process in the state court proceeding, the court

22   looks to the law of Nevada to determine the preclusive effect given to the prior judgment.  *Id.* at

23   328.

24   ///

25   ///

26

1        **1.        Issue Preclusion**

2        Issue preclusion is implicated where one or more parties to an earlier suit are involved in

3   later litigation on a different claim.  *Univ. of Nevada v. Tarkanian*, 879 P.2d 1180, 1191 (Nev.

4   1994).  Under Nevada law, for issue preclusion to apply, the following factors must be satisfied: (1)

5   the issue decided in the prior litigation is identical to the issue presented in the current action; (2)

6   the initial ruling was final and on the merits; (3) the party against whom the judgment is asserted

7   was a party or in privity with a party to the prior litigation; and (4) the issue was actually and

8   necessarily litigated.  *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008).

9        The Justice Court ruled Plaintiff had failed to pay utility fees he owed to the City of Ely.

10   Because Plaintiff failed to respond to the City's complaint, the Justice Court entered default

11   judgment against him in the amount of $4,942.72, representing the amount in utility fees and

12   associated penalties the City alleged Plaintiff owed.  Plaintiff then filed a motion to set aside the

13   default judgment, arguing the Justice Court was mistaken in the amount of money Plaintiff owed

14   the City.  In its order denying Plaintiff's motion, the Justice Court reasoned, "This Court did not set

15   the fees nor does this Court investigate alleged fees or sums claimed by any party, therefore this

16   Court was not mistaken by the sum claimed in the complaint filed."  (Defs.' Mot. Summ. J. (#30),

17   Ex. 11 at 2.)

18        In the present case, Plaintiff's claims generally focus on Defendants' alleged misconduct in

19   purposefully charging him utility fees higher than utility fees charged to similarly situated

20   businesses.  Thus, to apply issue preclusion to this case, the issue of the appropriate fees to charge

21   Plaintiff's Town & Country Motel must have been actually and necessarily litigated before the

22   Justice Court.  Here, the Justice Court explicitly held that it did not consider whether the sum

23   sought by the City for utility fees was accurate.  Instead, the Justice Court accepted the sum

24   provided by the City.  Because the issue was not actually decided and litigated before the Justice

25   Court, there is no issue preclusion here.

26

7

### 2.    Claim Preclusion

"A valid and final judgment on a claim precludes a second action on that claim or any part of it." *Tarkanian*, 879 P.2d at 1191 (citation omitted).  In Nevada, for claim preclusion to apply, the following factors must be satisfied: (1) the parties or their privities are the same; (2) the final judgment is valid; and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case.  *Five Star Capital*, 194 P.3d at 713.  Thus, "claim preclusion embraces all grounds of recovery that were asserted in a suit, as well as those that could have been asserted, and thus has a broader reach than collateral estoppel." *Tarkanian*, 879 P.2d 1192 (citations omitted).

In his motion to set aside the default judgment, Plaintiff questioned the accuracy of the fees assessed.  However, the Justice Court declined to consider the issue, stating, "This Court did not set the fees nor does this Court investigate alleged fees or sums claimed by any party, therefore this Court was not mistaken by the sum claimed in the complaint filed."  (Defs.' Mot. Summ. J. (#30), Ex. 11 at 2.)

Because the accuracy of the fees charged by the City was not actually litigated before the Justice Court, the question becomes whether the issue might have been properly litigated in the Justice Court.  *See Tarkanian*, 879 P.2d at 1192.  Presumably, had Plaintiff timely filed an answer to the complaint, Plaintiff could have raised the issue before the Justice Court, and the Justice Court would have addressed it.  In considering whether the Justice Court would have addressed the issue, the court notes the Justice Court's broad-sweeping language indicating the Justice Court does not "investigate alleged fees or sums claimed by any party." (Defs.' Mot. Summ. J. (#30), Ex. 11 at 2.)  Regardless, the court need not conclusively decide whether claim preclusion applies here because as discussed below, even if claim preclusion did not bar Plaintiff's claims, Defendants have demonstrated a lack of genuine issues of material fact with regard to the claims.

///

8

**C.  Statute of Limitations**

Defendants allege the applicable statutes of limitations bar Plaintiff's first seven claims for relief, which Plaintiff brings pursuant to 42 U.S.C §§ 1983, 1985, and 1986.  The applicable statute of limitations for 42 U.S.C § 1983 claims is the limitations period for personal injury claims.  *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (per curiam) (*citing Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)).   In Nevada, based on the statute of limitations for personal injury claims, the statute of limitations for claims brought pursuant to § 1983 is two years.  *Id.*  Claims brought pursuant to § 1985 are likewise governed by the statute of limitations for personal injury actions, and as such the statute of limitations for such claims is two years.  *McDougal v. County of Imperial*, 942 F.2d 668, 673-74 (9th Cir. 1991).  The statute of limitations for § 1986 claims is one year.  42 U.S.C. § 1986.

"A case is deemed to be commenced when the complaint is filed."  *Perez*, 869 F.2d at 426 (*citing* Fed. R. Civ. P. 3).  Here, Plaintiff filed the complaint on March 30, 2007.  To determine whether Plaintiff's claims are timely, the court must determine whether Plaintiff has alleged "discrete acts" occurring within the limitations period that would violate the Constitution.  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) (citations omitted),

Plaintiff alleges Defendants began discriminating against him in 1997.  In challenging Defendants' statute of limitations argument, Plaintiff argues, "Defendants misconduct occurs at least monthly and continues to this day."  (Pl's Opp'n Defs.' Mot. Summ. J. (#34) at 18.)   Thus, Plaintiff contends Defendants' conduct falls under the "continuing violations doctrine."

Under the doctrine, "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period."  *Williams v. Owens-Illinois*, Inc., 665 F.2d 918, 924 (9th Cir. 1982) (citation omitted).  However, a "mere continuing impact from past violations is not actionable."  *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (citations omitted).  Instead, "the proper focus is upon the time of the discriminatory acts, not upon

1   the time at which the consequences of the acts became most painful." *Abramson v. Univ. of*

2   *Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979).

3   　　　Defendants carry the burden of establishing a failure to comply with the statute of

4   limitations. *See Houghton v. Smith*, 965 F.2d 1532, 1536 (9th Cir. 1992).   Thus, they must

5   "establish the absence of a genuine issue of fact on each issue material to [the] affirmative

6   defense." *Id.* at 1537.   Once the moving party provides such evidence, the burden shifts to the non-

7   moving party to set forth specific facts showing the existence of genuine issues of material fact on

8   the affirmative defense. *Id.*   The court will address the statute of limitations applicable to each of

9   Plaintiff's claims individually below.

10   　　　　**1.   Utility Fee Claims**

11   　　　Plaintiff's first two claims for relief relate to Defendants' alleged decision to charge

12   Plaintiff excess utility fees for the operation of the Town & Country Motel and are brought

13   pursuant to 42 U.S.C § 1983.   As noted, the statute of limitation for § 1983 actions is two years.

14   　　　To determine when the statute of limitations bars these claims, the court must determine

15   when Plaintiff suffered the operative injury.   The evidence indicates that the City calculates its

16   utility fees for motels and hotels based on the number and type of rooms in the facility.   (Pl.'s Opp.

17   (#35), Exs. 25-M, 25-O; Defs. Reply (#36), Gardner Decl. at 3-5.)   While the actual rates charged

18   have changed, it appears that since 1998, the City has consistently applied this formula in assessing

19   utility fees.   Plaintiff does not appear to challenge the formula for assessing utility fees.   Instead,

20   Plaintiff challenges the number and type of rooms Defendants used in calculating the utility fees for

21   the Town & Country Motel.

22   　　　In particular, Plaintiff argues from 2003 to the present, the Town & Country business

23   license applications indicate the motel never had more than four rentable rooms.   (Pl.'s Opp. (#35),

24   Pl. Aff.)   Prior to 2003, it had between four and eight rentable rooms.   (*Id.*)   Plaintiff contends none

25   of these rooms were apartments and none had kitchenettes.   (*Id.*)

26

10

1    From at least August of 2003 through January of 2004, the City charged Plaintiff $21.00 in

2    sewer fees and $5.50 in landfill fees.  (Pl.'s Opp. (#35), Ex. 20.)  This is consistent with landfill

3    and sewer fees for residential properties.  (*Id.*, Exs. 25-M, 25-O.)  While it is unclear why the City

4    charged Plaintiff residential fees as opposed to commercial fees, as these fees are less than what

5    Plaintiff would otherwise be charged as a business, Plaintiff does not appear to challenge these

6    fees.

7    Instead, Plaintiff's challenge is based on a change that occurred in February of 2004.

8    Beginning in February of 2004, through June of 2006, the City charged Plaintiff $44.05 in landfill

9    fees and $126.00 in sewer fees.  (Defs. Reply (#36), Gardner Decl. at 6-7; Pl.'s Opp. (#35), Ex. 20.)

10   These calculations were based on the Town & Country Motel having 5 rentable rooms and 4

11   apartments or kitchenettes.  (*Id.* at 7.)

12   Thus, for the purpose of the statute of limitations, it appears Plaintiff first suffered the

13   allegedly discriminatory injury in February of 2004 when Defendants redefined the type of rooms

14   in the Motel.  Plaintiff alleges a pattern of discrimination that continued until June of 2006, when

15   the City shut off the water for the Motel based on nonpayment of fees. The classification of the

16   number and type of rooms was not a permanent determination, and Defendants presumably

17   reassessed the number and type of rooms in each motel or hotel at least yearly, upon receipt of the

18   business license application.

19   The court finds that Plaintiff continued to suffer as a result of the alleged discriminatory act

20   through June of 2006, when Defendants again reclassified the Town & Country Motel as a closed

21   business.  *Cf. Knox*, 260 F.3d at 1013 (finding the continuing violation doctrine did not apply

22   because plaintiff had not alleged a system of discrimination and because plaintiff's cause of action

23   accrued upon the "permanent and complete" determination of her suspension.)  Plaintiff filed his

24   complaint in March of 2007.  Thus, if true, Plaintiff has "state[d] facts sufficient . . . [to] support a

25   determination that the alleged discriminatory acts related closely enough to constitute a continuing

26

1  violation, and that one or more of the acts falls within the [two-year] limitations period." *DeGrassi*

2  *v. City of Glendora*, 297 F.3d 636, 645 (9th Cir. 2000).  Accordingly, the statute of limitations does

3  not bar Plaintiff's utility fee claims for actions taken after February of 2004.

4  **2.    Business License Fee Claim**

5  In the fourth claim for relief, Plaintiff alleges that by requiring Plaintiff to purchase a

6  business license, but also requiring Plaintiff to pay his past due utility fees, Defendants violated

7  Plaintiff's right to equal protection under the Fifth and Fourteenth Amendments to the United

8  States' Constitution.  Plaintiff alleges the conduct at issue occurred in 2001.  Plaintiff further

9  alleges that since Plaintiff paid the business license fee in 2001, Plaintiff did not pay, and

10  Defendants did not seek, a business license fee.  Thus, with regard to the business license fee claim,

11  the operative conduct occurred in 2001, well before the two year statute of limitations for § 1983

12  claims.  Accordingly, summary judgment is appropriate with regard to this claim.

13  **3.    Conspiracy Claims**

14  Plaintiff alleges two conspiracy claims.  First, in the fifth claim for relief, Plaintiff alleges

15  Defendants conspired to violate Plaintiff's "equal rights" by, on January 12, 2006, voting to retain

16  outside legal representation to collect the allegedly past due utility bills.  To the extent Plaintiff's

17  claim is based on 42 U.S.C. § 1985, the claim falls within the applicable two-year statute of

18  limitations.

19  Second, in the seventh claim for relief, Plaintiff alleges certain Defendants conspired to

20  selectively enforce the City's business license rates and utility fees.[1]  As evidence of the conspiracy,

21

22  _____

      [1] Defendants note that in his opposition to the motion for summary judgment, Plaintiff fails to address

23  the conspiracy claim brought under the seventh claim for relief.  However, Plaintiff does address the substance
      of the claim, but appears to have labeled the discussion "fifth cause of action." (Pl.'s Opp. (#35) at 8.)  The

24  court construes this is an inadvertent labeling error and considers the discussion to address the seventh claim
      for relief.  Nonetheless, nowhere in the opposition does Plaintiff address the claim brought under the fifth claim

25  for relief or challenge Defendants' arguments with regard to that claim.  Accordingly, summary judgment with
      regard to the fifth claim for relief is appropriate.

26

1  Plaintiff cites Defendants' failure to provide information Plaintiff requested in November and

2  December of 2006 regarding the utility fees charged to other businesses.  To the extent Plaintiff's

3  claim is based on 42 U.S.C. § 1985, the claim falls within the applicable two-year statute of

4  limitations.

5      Plaintiff also bases his conspiracy claims on 42 U.S.C. § 1986, for Defendants City of Ely

6  and Ely City Council allegedly knowing of the conspiracy and failing to act to prevent it.  As noted,

7  the statute of limitations for § 1986 violations is one year.  With regard to the seventh claim for

8  relief, Plaintiff alleges Defendants City of Ely and Ely City Council failed to act to prevent the

9  conspiracy to withhold information from Plaintiff in November and December of 2006.   This

10 conduct falls within the applicable one year statute of limitations.  Summary judgment is therefore

11 not appropriate with regard to his claim on this basis.

12      **D.  Utility Fee Claims**

13      The court will now turn to the merits of Plaintiff's claims surviving the statute of limitations

14 challenge.  Plaintiff's first and second claims for relief are brought pursuant to 42 U.S.C. § 1983

15 and allege Defendants arbitrarily set and assessed landfill and sewer fees for Plaintiff's Motel in

16 violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

17      Generally, to establish a § 1983 equal protection violation, the plaintiff must show that the

18 defendants, acting under color of state law, discriminated against him as a member of an

19 identifiable class and that the discrimination was intentional.  *Flores v. Morgan Hill Unified Sch.*

20 *Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003) (citations omitted).  Here, Plaintiff has failed to allege

21 that he is a member of an identifiable class.  Nonetheless, in *Village of Willowbrook v. Olech*, the

22 Supreme Court recognized that, in some circumstances, a plaintiff can allege an equal protection

23 claim even if the plaintiff has not alleged class-based discrimination, and instead alleges that he has

24 been irrationally singled out as a "class of one."  528 U.S. 562, 564 (2000) (per curiam).

25      To succeed on a class-of-one theory, the plaintiff must establish that (1) the defendants

26

13

intentionally treated him differently than similarly situated individuals and (2) there is no rational basis for the difference in treatment. *Id.* Although the Ninth Circuit recognizes the class-of-one theory, the court has cautioned that, "unless constrained, the class of-one-theory of equal protection claim could provide a federal cause of action for review of almost every . . . administrative decision." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007), *aff'd*, 128 S.Ct. 2146 (2008).

As noted, to succeed under a class-of-one theory, the plaintiff must demonstrate that the defendant intentionally treated him differently than similarly situated individuals. Defendant Gardner, the individual responsible for preparing and sending the monthly utility bills, denies ever treating Plaintiff's motel differently than similarly situated motels. (Defs.' Reply (#36), Gardner Decl. at 2.) As evidence that Defendants intentionally charged him fees higher than similarly situated motels, Plaintiff offers a utility statement for the Rustic Inn, located in Ely, Nevada. (Pl.'s Opp'n (# 34), Ex. 9.) The statement indicates that for the month of April of 2006, the City charged the Rustic Inn $25.50 in landfill fees and $82.60 in sewer fees. (*Id.*)

Plaintiff provides no evidence demonstrating that the Rustic Inn is a similarly situated business with regard to the number of rentable rooms, the type of rooms, the amount of water consumed, and other potentially relevant factors to the similarity determination. To the contrary, Defendants have provided evidence indicating the Rustic Inn has twelve rooms and no kitchens. (Defs.' Reply (#36) Gardner Decl. at 4-5.) As noted, the City based its landfill and sewer fees upon the number and type of rooms in the motel. (*Id.*, Gardner Decl. at 4, Ex. 25.) Accordingly, because the Town & Country Motel had four kitchens and because the fees for kitchens were greater, its utility fees were greater than that of the Rustic Inn. (*Id.*)

Thus, Defendants have presented evidence indicating they treated Plaintiff identically as similarly situated individuals. Although Plaintiff contends his business license applications for the relevant years, February of 2004 to the present, indicated the Motel did not possess apartments or

14

kitchenettes, Plaintiff has failed to present those business license applications or otherwise rebut Defendants' evidence.  Further, Plaintiff does not actually dispute the City's conclusion that the Motel had four kitchenettes or apartments.  Instead, Plaintiff's affidavit merely states that he did not report to the city that the Motel possessed kitchenettes or apartments and that he was unaware of the City ever inspecting the Motel to determine the type of rooms therein.

Further, even if Defendants were mistaken in the number and type of rooms at the Town & Country Motel, there is no evidence in the record rising to the level of intentional discriminatory treatment.  As noted, Defendant Gardner denies any such intention and indicates that in applying the utility rates to the number and type of rooms in the Town & Country Motel, she acted pursuant to information provided by the City Engineer's Office and to the requisite landfill fee schedule. Plaintiff has not named the City Engineer's Office or any officer or employee of the office as a defendant in this case.  Moreover, Plaintiff has failed to demonstrate how any individual defendant, other than Defendant Gardner, was personally involved in determining, for the purposes of assessing utility fees, the number and type of rooms in the City's hotels and motels.  Absent such individual participation, Plaintiff cannot show that the allegedly discriminatory treatment was intentional.

Finally, Defendants have provided a rational basis for the utility fees charged to Plaintiff. As noted, in calculating the utility fees, Defendants relied upon information from the City Engineer's Office in determining the number and types of rooms in the Town & Country Motel, and Plaintiff has failed to name either the City Engineer's Office or an officer or employee of the City Engineer's Office as a defendant in this case.  (Defs.' Reply (#36), Gardner Decl. at 3.) Relying on this information, Defendant Gardner charged Plaintiff utility fees based on the Motel having four rooms and five kitchenettes.  (*Id.*)  Although Plaintiff asked at City Council meetings for an explanation of his billing, he was frequently told to go to City Hall and discuss with Defendant Gardner how his bills were calculated.  (*Id.* at 4.)  Plaintiff never did so.  (*Id.*)

15

Defendants have demonstrated an absence of material facts with regard to whether Defendants intentionally and arbitrarily treated Plaintiff differently than similarly situated business owners.  Accordingly, summary judgment with regard to Plaintiffs utility fee claims is appropriate.

**E.  Conspiracy**

Plaintiff's seventh claim for relief alleges certain individual Defendants conspired to violate Plaintiff's equal protection rights in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.  In particular, Plaintiff alleges certain Defendants conspired to selectively enforce the City's business license rates and utility fees.  In addition, Plaintiff alleges the City and the City Council failed to eliminate arbitrary, discriminatory, and capricious enforcement of utility and business license fees.

A violation of § 1985 requires the following: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983).

"The absence of a [§] 1983 deprivation of rights precludes a [§] 1985 conspiracy claim predicated on the same allegations." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (citations omitted).  Here, Plaintiff seeks relief under § 1985 for the same allegedly discriminatory and arbitrary acts alleged in his §1983 claims under the first and second causes of action for selectively enforced utility fees.  The court has determined that there are no genuine issues of material fact concerning whether the City selectively enforced such fees.  Because the § 1985 claim is predicated on an allegation of a § 1983 violation that the court has found lacking sufficient evidentiary support, summary judgment with regard to Plaintiff's seventh cause of action is appropriate.

16

To the extent Plaintiff's conspiracy claim is based upon Defendants' unlawfully conspiring to withhold information requested by Plaintiff, summary judgment is also appropriate.  On August 29, 2002, the City informed its residents of its policy prohibiting the disclosure of information relating to business licenses, business operations, financial information, and information relating to landfill fees for businesses in the City.  (Pl.'s Opp. (#35), Ex. 1.)  The City enacted this policy pursuant to Nevada Revised Statutes Section 268.095(6), which the City construed as providing a "specific privilege of confidentiality" for such information.  (*Id.*)  Plaintiff has failed to present any evidence indicating that the City acted contrary to this policy and disclosed such information to any individual.  Accordingly, the court finds that Defendants did not intentionally or arbitrarily refuse to disclose the requested information to Plaintiff.  Absent such a constitutional violation, the court cannot find a conspiracy under § 1985.  Summary judgment is therefore appropriate.

**F.   Abuse of Process**

Plaintiff's eighth cause of action alleges Defendants Bybee, Watts, Lampros, Marich, Smith, and Fairman deliberately, knowingly, and maliciously instituted a lawsuit to remove Plaintiff from his position as mayor.  As Defendants note, Nevada law only recognizes a malicious prosecution claim in the criminal context.  *See Lamantia v. Redisi*, 38 P.3d 877, 880 (Nev. 2002). Accordingly, the court interprets Plaintiff's malicious prosecution claim in conformity with the evidence as one for abuse of process.

The elements of an abuse of process claim are (1) an ulterior purpose by the defendants other than resolving a legal dispute and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceedings.  *Lamantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002).  Here, there is no evidence indicating Defendants had an ulterior purpose in filing the lawsuit to obtain payment of Plaintiff's past due utility bills or that Defendants willfully used the legal process to accomplish an improper purpose.  As the court determined above, Plaintiff has failed to demonstrate a genuine issue of material fact concerning whether Defendants imposed the utility

fees arbitrarily and whether Defendants sought the fees for an improper purpose.  Instead, Defendants had a valid basis for bringing the lawsuit.  Accordingly, the court will grant summary judgment with regard to the abuse of process claim.

**G.  Unjust Enrichment**

Plaintiff's ninth cause of action alleges the City has been unjustly enriched by charging and collecting more money from Plaintiff for utility fees than from similarly situated businesses and individuals.  "Unjust enrichment is the unjust enrichment of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Topaz Mut. Co. v. Harsh*, 839 P.2d 606, 613 (Nev.1992) (*quoting Nevada Indus. Dev. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987)).  The essential elements of an unjust enrichment claim are (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit." *Id.* (*quoting Unionamerica Mtg. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)).

As the court indicated above, Plaintiff has failed to raise a genuine issue of material fact concerning whether Defendants charged him different utility fees than similarly situated individuals or businesses.  If Defendants did not fraudulently set or charge Plaintiff's utility rates, then Defendants have enjoyed no benefit from Plaintiff's utility payments.  Instead, the City has a legitimate right to collect utility fees for the utility services it provided.  Thus, there are no genuine issues of material fact concerning whether Defendants have been unjustly enriched.  Summary judgment as to Plaintiff's ninth claim for relief is therefore appropriate.

**H.  Harassment**

Plaintiff's tenth claim for relief alleges Defendants harassed Plaintiff by (1) failing to provide the requested information concerning the business licence requirements and utility rates, (2) continuing to apply arbitrary utility fees, and (3) making discriminatory and inflammatory remarks and taking discriminatory and inflammatory actions.  This claim is virtually identical to

Plaintiff's first, second, and fourth causes of action.  Plaintiff argues that, under a class-of-one theory, Defendants intentionally treated him differently from others similarly situated and that there is no rational basis for the difference in treatment.  The court has rejected this argument above, as Plaintiff has failed to provide any evidence indicating he was treated differently than similarly situated individuals.  As a result, summary judgment as to the harassment claim is appropriate.

## I.  Defamation and Injury to Reputation

Plaintiff's eleventh claim for relief alleges Defendants Bybee, Lampros, Marich, Smith, Watts, Hutchings, Alworth, and Fairman made false statements about Plaintiff at public meetings and in sworn documents.  Plaintiff alleges these Defendants falsely stated that he did not pay his utility bills and was a debtor to the City and made other derogatory remarks to Plaintiff at public meetings.  Plaintiff argues that these statements harmed his reputation as mayor and as a businessman.

After review of the evidence offered and cited by Plaintiff in support of his defamation claim, the court has found the following statements relevant to the defamation claim: (1) statements concerning Plaintiff's failure to pay his utility bills made at public meetings and in sworn documents; (2) Councilman Lampros' statement at a City Council meeting that read, "Why are we doing it like we used to in Greece . . . the village days are over"; (3) Councilman Bybee's statement at a City Council meeting that read, "You are a damn liar"; and (4) a statement on a poster hung in City Hall indicating, "[Mayor Chachas is] watching you."  (Opp'n to Mot. for Summ. J. (#34), Exs. 32, 33.)

"The general elements of a defamation claim require a plaintiff to prove: '(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault . . . ; and (4) actual or presumed damages.'" *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002) (*quoting Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993)).  Where a defamation action involves a public official, a plaintiff must allege and prove by

clear and convincing evidence "actual malice." *Id.* (*citing New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).  Actual malice is "knowledge that [the statement] was false or with reckless disregard of whether it was false." *Id.* (*citing Sullivan*, 376 U.S. at 280).

Nevada Revised Statutes Section 241.0353 provides, "Any statement which is made by a member of a public body during the course of a public meeting is absolutely privileged and does not impose liability for defamation or constitute a ground for recovery in any civil action."  Thus, to the extent Plaintiff's defamation claims are based on statements made by the City Council members at public meetings, the statements are privileged and Plaintiff's defamation claim must fail.

In support of his defamation claim, Plaintiff also cites the posters hung in City Hall displaying his photograph and proclaiming, "I am watching you."  Plaintiff has failed to identify any individual, including Defendants, responsible for this poster.  Accordingly, absent some personal participation or allegations of failure to act by one of Defendants, summary judgment is appropriate.

Finally, in support of his defamation claim, Plaintiff cites Defendants' statements in "sworn court documents." (Compl. (#1) ¶ 142.)  However, statements made in a judicial proceeding are absolutely privileged.  *Circus Circus Hotels v. Witherspoon*, 657 P.2d 101, 104 (Nev. 1983).  Thus, to the extent Plaintiff's defamation claim is based on statements made during the course of a judicial proceeding, summary judgment is likewise appropriate.

**J.  Temporary Injunctive Relief**

Plaintiff also seeks temporary injunctive relief.  Specifically, he seeks a temporary injunction to prevent the City and the Municipal Utility Board from continuing to overcharge him for utility fees until the court resolves this case.  In addition, he requests an injunction to prevent the City from enforcing the lien against his property and an order requiring the City to reconnect his water service and set his utility rates at the standard residential utility rates.  However, because Plaintiff has failed to demonstrate a genuine issue of material fact with regard to his utility rates,

20

Plaintiff is not entitled to temporary injunctive relief.

**K.  Attorneys' Fees**

Finally, in his opposition, Plaintiff asks that the court order Defendants to reimburse the attorneys' fees he incurred in responding to the motion for summary judgment.  The court finds no basis for awarding Plaintiff attorneys' fees.  As a result, the court will deny Plaintiff's request.

IT IS THEREFORE ORDERED that Defendants' Renewed Motion for Summary Judgment (#30) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Renewed Counter-Motion for Partial Summary Judgment (#35) is hereby DENIED.

The Court Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

DATED this 30th day of March, 2009.

_____

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

21